IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE THE APPLICATION OF | * |
| | * |
| GUILANDE CHARLES, | * |
|     Petitioner, | *   Civil Action File |
| | *   No.: 1:23-cv-02418-VMC |
| v. | * |
| | * |
| EVENS DRY, | * |
|     Respondent. | * |
| | * |

## TRIAL BRIEF

COMES NOW, GUILANDE CHARLES, Petitioner in the above-styled matter, and files this, her Trial Brief, and respectfully shows this Court as follows:

### I. FACTUAL BACKGROUND

The present action seeks the return of a minor child, A.Y.A.D. (hereinafter referred to as "minor child"), to Canada pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (herein the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (22 U.S.C. § 9001 et. seq., hereinafter "ICARA"). The minor child was born in the United States to Petitioner and Respondent in 2012. The minor child resided in the United States for six months at which time the minor child and the Petitioner

moved to Quebec, Canada. Since that time and up until May 12, 2022, the minor child resided in Canada with Petitioner, and at times the Respondent as well. There are multiple court orders regarding the custody and visitation of the child between the Parties.

In May of 2022, when the minor child was nine (9) years old, Petitioner allowed the minor child to visit the Respondent in Georgia. It was Petitioner's understanding that this visit was for the summer only, and the child would return once summer ended. At the end of the summer, the Petitioner consented to the minor child staying for the first semester of school. At the end of the semester, the Respondent refused to return the minor child. The Petitioner came to Georgia, seeking the return of the minor child but was unsuccessful.

On or about March 2023, Petitioner submitted an application to the Canadian Central Authority seeking the return of the child pursuant to the Hague Convention. Petitioner filed the present action on or about May 30, 2023.

## II. ARGUMENT AND CITATION TO AUTHORITY

A case arising under the Hague Convention demands a limited inquiry into only the question of whether a minor child must be returned to her country of habitual residence. First, the Petitioner bears the burden of proving, by a preponderance of the evidence, a prima facie case for return of the child. Once this

is satisfied, the burden shifts to the Respondent to show that one of the enumerated affirmative defenses justifies a decision to not return the child. Because Petitioner can make out a prima facie case for return of K.P.C.A. and none of the affirmative defenses apply, this Court should order the immediate return of the minor child to Canada.

*A. Prima Facie Case*

The prima facie case for return of the child is comprised of three parts. The Petitioner must show that (1) the child was a habitual resident of another country, (2) the Petitioner had valid custody rights under the laws of the country from which the child was removed, and (3) the Petitioner was actually exercising or would have been exercising her custodial rights at the time of removal or retention.

First, a court must determine the country "in which the child was habitually resident immediately before the removal or retention." Hague Convention Art. 3(a). The Convention itself does not define "habitually resident." The United States Supreme Court has held that this is a fact-specific inquiry, and that "a child's habitual residence depends on the specific circumstances of the particular case." *Monaski v. Taglieri*, 140S.Ct. 719, 727 (2020). Generally speaking, however, "a child habitually resides where the child has become 'acclimatiz[ed]'

to her surroundings." *Id.* at 724 (alteration in original). This inquiry also looks closely to the subjective intent of the parties regarding the minor child's habitual residence. *Calixto v. Lesmes*, 909 F.3d 1079, 1084 (11th Cir. 2018). In the Eleventh Circuit, "the 'unilateral intent of a single parent' will not suffice to change a child's habitual residence." *Id.* (citing *Redmond v. Redmond*, 724 F.3d 729, 745 (7th Cir. 2013).

Second, a person wrongfully removes or retains a child when the removal or retention "is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident." Hague Convention Art. 3(a). Here, courts must look to the law of the country from which the minor child was removed to determine whether the parent or guardian enjoyed custodial rights rather than to the law of the nation to which the child was taken. *Id.* Even where a parent does not have sole or primary custody of a child, "the violation of a *single* custody right suffices to make the removal of a child wrongful." *Furnes v. Reeves*, 362 F.3d 702, 714 (11th Cir. 2004) (emphasis in original) (holding that, although the left-behind parent did not have authority to determine where the child could live *within* Norway, he still had the right to object to the child living *outside* Norway).

Third, removal or retention of a child from his country of habitual residence

is only wrongful if "at the time of removal or retention, those [custody] rights were actually exercised . . . or would have been so exercised but for the removal or retention." Hague Convention Art. 3(b). This requirement bars return actions brought by parents who have abandoned their children. *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996) (holding that "if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child").

Petitioner satisfies all three requirements to make out a prima facie case for the return of the minor child. To begin, there can be no doubt that the ten years that the minor child lived in Canada from age six months to almost ten yeas is sufficient to acclimatize her to her surroundings.  The minor child had only ever lived in Canada except for an extended trip to Haiti.  In his Answer, Respondent does not contest that the child was habitually resident in Canada prior to the wrongful removal.

Next, the Canadian courts have granted custody and visitation rights to both Parties.  The Respondent claims that based on the court order from 2018, he had "sole" custody of the child and therefore, the Petitioner did not have custodial rights.  This would be an incorrect application of the Convention.  Petitioner, in

the 2018 Canadian court order had rights of visitation. Rights of visitation are custodial rights pursuant to the Convention. See *Furnes v. Reeves*, 362 F.3d 702, 714 (11th Cir. 2004). Furthermore, the Court in Canada issued an order on January 26, 2023 giving the Petitioner sole custody with parenting time for the Respondent to be at the discretion of the Director of Youth Protection.

Finally, Petitioner was exercising her custodial rights and would have continued to do so but for Respondent's wrongful retention of the minor child in the United States. As previously stated, the Petitioner and the minor child were living together in Canada. Petitioner allowed the child to visit Respondent in the United States and expected the minor child to return either at the end of the summer or the end of the first school semester, whereupon they would continue to reside indefinitely in Canada. This is not a case in which Petitioner abandoned the minor child and did not actually exercise her custodial rights. Therefore, Petitioner can establish a prima facie case for the return of the minor child to Canada.

B. *Affirmative Defenses*

Upon establishment of Petitioner's prima facie case for return, the Hague Convention permits the Respondent to raise five (5) affirmative defenses. In the Eleventh Circuit, these defenses are "construed narrowly so as to prevent them from swallowing the rule and rendering the Convention a dead letter."

*Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358–59 (11th Cir. 2020) (internal quotes and citation omitted). While it is not clear from Respondent's Answer, it appears that the Respondent has raised all but one of the affirmative defenses. Each will be addressed in turn.

### i. *The Well-Settled Defense*

The first affirmative defense is known as the "well-settled" defense. Hague Convention Art. 12. The well-settled defense requires the Respondent to show that the Petitioner has failed to bring his claim within one year of the wrongful removal or retention *and* "that the child is now settled in its new environment." *Id.* The clock begins on the day that the child is wrongfully retained in the new country and stops when the Return Action is filed. *Romero v. Bahamonde*, 857 Fed. App'x 576, 584 (11th Cir. 2021). Where the retention involves consent to travel, the left-behind parent has no recourse to demand the return of a child until the abducting parent actually retains the child beyond the anticipated return date. *Calixto*, 909 F.3d at 1087 (finding that the Colombian left-behind parent who signed a travel consent letter was forced to wait an entire year before filing an application with the Central Authority).

Here, Petitioner consented to the minor child coming to the United States to visit the Respondent. Because the Petitioner consented, the Petitioner cannot

claim that the minor child was wrongfully removed until after the anticipated return date. Here, the Parties had little communication regarding when exactly the child would be returned. The Petitioner initially consented to the child staying for the summer but then consented to the child staying for the first semester of school. It is undisputed that the Petitioner came to Georgia in December of 2022 seeking the return of the child. At that time it is clear that the Respondent was wrongfully retaining the child in the United States. Petitioner filed this action on May 30, 2023, less than one year from when Respondent began to wrongfully retain the child in the United States. Therefore, because Petitioner initiated the Return Action within a year, Respondent is prohibited from raising the well-settled defense.

      *ii.   The Mature Child Objection Defense*

The second affirmative defense is known as the "mature child objection" defense. This defense requires that Respondent show, by a preponderance of the evidence, "that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention Art. 13. Even if a court finds that a sufficiently mature child objects to being returned, the decision to return the child merely falls to the court's discretion. *Id.* In analyzing this question, courts look to "(1) whether the child was

sufficiently mature; (2) whether the child has a particularized objection to being repatriated; and (3) whether the objection is the product of undue influence." *Romero*, 857 Fed. App'x at 583.

First, a finding that the child is sufficiently mature under the meaning of the Hague Convention does not rest exclusively on the child's age. *Id.* Rather, the child must be sufficiently mature to offer nuanced opinions on the subject of where to reside. *Id*; *De Jesus Joya Rubio v. Alvarez*, 526 F. Supp. 3d 1186, 1205 (S.D. Fla. 2021) (relying heavily upon the expert opinion of the child's psychologist who found the child to be capable of expressing nuanced opinions about both parents and of enumerating specific reasons he objected to the return).

Second, this defense requires the child to articulate a particular objection to returning to her country of habitual residence. *Romero*, 857 Fed. App'x at 583. Specifically, the child must voice an opinion "affirmatively objecting to returning to one country—when living in that country would be unacceptable." *Rodriguez v. Yanez*, 817 F.3d 466, 477 (5th Cir. 2016). It is essential to note, however, that a "child's objection is different from a child's wishes, as would be considered in a custody hearing." *De Jesus Joya Rubio*, 526 F. Supp. 3d at 1205 As such, the child at issue must lodge a specific objection based on the child's actual, personal knowledge. *Id.*

Third, the Court must find that the opinion voiced by the child is the child's alone and not the product of undue influence. *Romero*, 857 Fed. App'x at 583. In determining this factor, "courts place great weight on whether the objection is based on the child's firsthand experiences." *Id.* (citing *Colon v. Montufar*, 470 F. Supp. 3d 1280, 1298 (S.D. Fla. 2020). In *Romero*, the child in question voiced objection to being returned to Chile based on her father's repeated verbal and physical assaults on her mother and an incident in which the left-behind parent cut the child and the abducting parent off financially and allowed them to live on the street without food or support. *Romero*, 857 Fed. App'x at 583–84.

Although the Court has the discretion to determine at what age a child is mature, Petitioner contends that age ten is not that age. Here, Respondent, in his Amended Answer, averred that "the minor child of the parties is ten (10) years of age and will be eleven (11) in four (4) short months. She is articulate and intelligent, as evidenced by her being allowed to begin fifth (5) grade in August 2022, though she should have been in fourth (4th) grade due to her age. The minor child has expressed missing her mother as expected but has also expressed a desire to not return to Canada nor the foster family that she had to live with before coming to the Respondent's care. The minor child should be allowed to express her true desires to the Court."

If, as the Respondent averred in his Amended Answer, the minor child merely desires to live primarily with her father, the Hague Convention mandates that this Court order her return to Canada. Respondent has not met the standard for a mature child objection.

### iii. The Consent or Acquiescence Defense

While it is not clear in Respondent's Answer, it does appear that the Respondent is raising the "consent" defense. The third affirmative defense is the "consent" defense. Article 13 states that the Court is not bound to return a child where the left-behind parent "consented to or subsequently acquiesced in the removal or retention." Hague Convention Art. 13(a). Respondent bears the burden of proving, by a preponderance of the evidence, that Petitioner affirmatively consented or acquiesced to the minor child permanently residing in the United States. *Berenguela-Alvarado*, 950 F.3d at 1360 (reversing and remanding a district court opinion which placed the burden on the petitioner to show that her consent was the product of duress). Critically, however, the doctrines of consent and acquiescence are analytically distinct from one another. *Darín v. Olivero - Huffman*, 746 F.3d 1, 14 (1st Cir. 2014). "The consent defense involves the petitioner's conduct prior to the contested removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to or accepted

the removal or retention."*Baxter v. Baxter*, 423 F.3d 363, 371 (3rd Cir. 2005). While prior consent is ordinarily a more freeform inquiry into the subjective intent of the parents before removal or retention, subsequent acquiescence requires more formality to show such intent. *Darín*, 746 F.3d at 15–16 (listing "testimony in a judicial proceeding, a convincing written renunciation of rights, or a consistent attitude over a significant period of time" as plausible methods of subsequent acquiescence).

Courts have found that simply allowing children to visit the United States does not constitute consent or acquiescence under Article 13(a) of the Hague Convention. *Giampaolo v. Erneta*, 390 F. Supp. 2d 1269, 1283. Moreover, courts have rejected "self-serving testimony" claiming that the left-behind parent allowed the abducting parent to have custody of the child. *Garcia v. Varona*, 806 F. Supp. 2d 1299, 1318. Further, evidence demonstrating the left-behind parent's prompt and consistent efforts to obtain the child's return prevent an abducting parent from successfully asserting the consent/acquiesce defense. Giampaolo, 390 F. Supp. 2d at 1283 (finding the "evidence suggests exactly the opposite" of abducting parent's consent/acquiescence defense because the left-behind parent "actively sought the return of the Child," noting that "[s]hortly after [the left-behind parent] realized that [the abducting parent] would not return the Child voluntarily, [the

left-behind parent] contacted the Central Authority of Argentina, completed a Hague Application, corresponded with the Center for Missing Children, revoked the Authorization to Travel document, and sought legal assistance to file his Hague Petition") see also *Lops v. Lops*, 140 F.3d 927, 945 n.26 (11th Cir. 1998) (rejecting the abducting parent's consent/acquiescence defense because "[the left-behind parent] had persistently prosecuted and protected her custody rights in the German courts, and . . . made concerted efforts to locate the children through international, national, and local agencies"); *Furnes v. Reeves*, 362 F.3d 702, 724 (11th Cir. 2004), overruled on other grounds, 134 S. Ct. 1224 (2014) (holding left-behind parent's repeated and extensive efforts to obtain legal assistance in Norway were "completely inconsistent with any claim of acquiescence in the child being detained permanently in the United States").

Applied here, the evidence shows that Mother neither consented to nor subsequently acquiesced in the retention of minor child in the United States. To the contrary, Mother has consistently asserted her custody rights of Child and has pursued her case for Child's return to Canada. Mother agreed that Child would visit the Respondent in the United States from May 2022 until initially August 2022 and then December 2022. The evidence confirms Mother's expectation of Child's return in December 2022 and that she did not later "acquiesce" for her to

permanently remain in this United States.

    iv. *The Grave Risk of Harm Defense*

  The fourth affirmative defense raised by the Respondent is the "grave risk of harm" defense. The Hague Convention provides that the Court is not bound to return a child where the Respondent can show by clear and convincing evidence that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention Art. 13(b). Respondent asserts that the minor child faces a grave risk of harm if returned to Canada. Under the grave risk of harm defense, Respondent must show, *by clear and convincing evidence*, that the child faces a grave risk of harm if returned to his country of habitual residence. *Romero*, 857 Fed. App'x at 586.

  A grave risk of harm under the Hague Convention presents a significantly higher burden than a "best interests" analysis in custody cases. Courts identify a grave risk of harm when, for example, "returning the child to a zone of war, famine, or disease" or "in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection." *Friedrich*, 78 F.3d at 1069 (refusing to accept the grave risk of harm

defense where the child would merely have trouble re-adjusting to life in Germany if returned). *Cf. Romero*, 857 Fed. App'x at 586 (finding a grave risk of harm where the left-behind parent beat the abducting parent so severely that she miscarried and broke several bones); *Gomez v. Fuenmayor*, 812 F.3d 1005, 1013 (11th Cir. 2016) (finding a grave risk of harm where the left-behind parent had repeatedly threatened to kill the abducting parent and had threatened the child on at least one occasion); *Taylor v. Taylor*, 502 Fed. App'x 854, 857 (11th Cir. 2012) (finding a grave risk of harm where the left-behind parent and an anonymous third party had repeatedly threatened to kill the abducting parent).

By comparison, Respondent here fails to allege any threats of violence or actual physical or verbal abuse on the part of Petitioner. Instead, Respondent points to allegations of abuse and neglect and the involvement of the Directorate of Youth Protection in the child's life in Canada. However the Director of Youth Protection notes that the child was court ordered back to the Petitioner's custody and further the Court order granting the Petitioner sole custody was signed by the Director of Youth Protection. None of the allegations set forth in Respondent's enumeration of affirmative defenses provide support for the claim that the minor child faces a grave risk of harm if returned to Canada.

## III.  CONCLUSION

Petitioner can establish a prima facie case for the return of a child under the Hague Convention, and Respondent cannot support any of the affirmative defenses that permit this Court to refuse Petitioner's request for relief. This Court should order the immediate return of the minor child to Canada.

Respectfully submitted, this 22nd day of August 2023,

*/s/ Bonnie Stinson*

PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
BONNIE M. STINSON
Georgia Bar No.: 418092
Counsel for Petitioner
**SHEWMAKER & LEWIS, LLC**
50 Technology Way Pkwy S
Peachtree Corners, Georgia 30092
Office 770-939-1939
pshewmaker@shewmakerlaw.com
Bstinson@shewmakerandlewis.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served opposing counsel in the foregoing matter with a copy of the within and foregoing TRIAL BRIEF by electronic service in accordance with Local Rules:

Jerbrina L. Johnson
Attorney for Respondent
Perimeter Law Group, LLC
2336 Wisteria Drive, Ste 410
Snellville, Georgia 30078
jjohnson@plgfirm.org

Respectfully submitted, this 22nd day of August, 2023,

SHEWMAKER & LEWIS, LLC

*/s/ Bonnie Stinson*
PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
BONNIE M. STINSON
Georgia Bar No. 418092
Counsel for Petitioner

50 Technology Parkway South
Peachtree Corners, Georgia 30092
770-939-1939  phone
pshewmaker@shewmakerandlewis.com
bstinson@shewmakernandlewis.com

## CERTIFICATE OF FONT AND POINT SELECTION

I hereby certify that the foregoing was prepared in Times New Roman font in 14 point type in compliance with Local Rule 5.1(C).

*/s/ Bonnie Stinson*
PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
BONNIE M. STINSON
Georgia Bar No. 418092
Counsel for Petitioner
**SHEWMAKER & SHEWMAKER, LLC**
50 Technology Way Pkwy S
Peachtree Corners, Georgia 30092
Office 770-939-1939
pshewmaker@shewmakerlaw.com
Bstinson@shewmakerlaw.com